IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

GEMSTAR GROUP USA, INC.,        §
                                §
         Plaintiff,             §
                                §
v.                              §        CIVIL ACTION NO. H-08-1822
                                §
FERRAGAMO USA, INC.,            §
                                §
         Defendant.             §

## MEMORANDUM OPINION

Pending before the court[1] are Defendant's Motion to Dismiss or, in the Alternative, to Transfer Case (Docket Entry No. 6) and Defendant's Motion to Strike Plaintiff's Reply Brief or, in the Alternative, for Leave to File Sur-surreply (Docket Entry No. 24). The court has considered the motions, all relevant filings, and the applicable law. For the reasons set forth below, the court **GRANTS** Defendant's motion to dismiss and **DENIES** its motion to transfer as **MOOT**. The court **DENIES** Defendant's motion to strike, but **GRANTS** Defendant leave to file its "sur-surreply."

## I.  Case Background

Defendant in this contract dispute is an international corporation, organized under the laws of the state of New York, that designs, crafts, and sells leather fashion items and related

_____

[1]   The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Docket Entry No. 15.

goods.[2]  Defendant's principal place of business is in New York and its administrative offices are in New Jersey.[3]  Defendant neither maintains an office nor stations employees in Texas and is not authorized to conduct business in Texas.[4]  All Texas retail stores that sell Defendant's products are operated by S-Fer International, Inc., ("S-Fer"), a subsidiary of Defendant.[5]  Plaintiff, a Texas resident, is in the business of supplying and installing custom stonework.[6]

In late 2005 or early 2006, Defendant solicited[7] by telephone a bid from Plaintiff for stonework projects to be completed at

---

[2]    See Notice of Removal, Docket Entry No. 1, Ex. A, Plaintiff's Original Petition, ¶ 6; Defendant's Brief in Support of its Motion to Dismiss or, Alternatively, to Transfer Venue ("Defendant's Motion"), Docket Entry No. 7, Ex. A, Declaration of Thomas Costello ("Costello"), ¶ 2; Plaintiff's Response to Defendant's Motion to Dismiss ("Plaintiff's Response"), Docket Entry No. 13, Ex. 6, copy of webpage.  The court located no affidavit authenticating several of the exhibits to Plaintiff's response, including the copy of a webpage with a web address of www.salvatoreferragamo.it/en/.  However, the information that the court derives from the webpage is undisputed information included solely as general background.

[3]    Defendant's Motion, Docket Entry No. 7, Ex. A, Declaration of Costello, ¶ 2.

[4]    Id. at ¶ 3.

[5]    Id. at ¶ 4.

[6]    See Notice of Removal, Docket Entry No. 1, Ex. A, Plaintiff's Original Petition, ¶ 11; Plaintiff's Response, Docket Entry No. 13, Ex. 1, Affidavit of Gianpaolo Garrone ("Garrone"), ¶ 20.

[7]    The parties seem to disagree on the issue of who sought whose business.  Compare Defendant's Motion, Docket Entry No. 7, Ex. A, Declaration of Costello, ¶ 7 with Notice of Removal, Docket Entry No. 1, Ex. A, Plaintiff's Original Petition, ¶ 7; Plaintiff's Response, Docket Entry No. 13, Ex. 1, Affidavit of Garrone, ¶ 6.

three stores in California and New Jersey.[8]  After Defendant's architect sent Plaintiff drawings and work specifications, negotiations ensued.[9]  The parties conducted negotiations via e-mail, telephone, and mail communications.[10]

According to Gianpaolo Garrone ("Garrone"), Plaintiff's president, Defendant "accepted the essential terms of the contract and consummated the oral agreement at issue in this case on February 8, 2006."[11]  Thereafter, Plaintiff prepared formal quotes, prepared the first set of invoices related to a materials deposit, traveled to Italy to source stone materials, and communicated with Defendant regarding the scope of work.[12]  Although Garrone traveled to New York and New Jersey during the course of the negotiations,

---

[8]    See Notice of Removal, Docket Entry No. 1, Ex. A, Plaintiff's Original Petition, ¶ 7; Plaintiff's Response, Docket Entry No. 13, Ex. 1, Affidavit of Garrone, ¶¶ 5, 6.  Costello, senior vice president of Defendant's operations, stated that Defendant paid Plaintiff $24,600 in connection with the installation of stonework at a Virginia store, but Plaintiff never performed any work on that location.  Defendant's Motion, Docket Entry No. 7, Ex. A, Declaration of Costello, ¶ 5.

[9]    See Plaintiff's Response, Docket Entry No. 13, Ex. 1, Affidavit of Garrone, ¶¶ 7-8.

[10]    See id. at ¶¶ 5, 8.

[11]    Id. at ¶ 8 (also specifically denying that the parties entered the contract in March 2006); see also Defendant's Motion, Docket Entry 7, Ex. A, Declaration of Costello, ¶ 6 (stating that Garrone is Plaintiff's president).  Contrary to Garrone's testimony, Plaintiff alleged in its petition that the parties entered into an agreement "on or about March 30, 2006."  Notice of Removal, Docket Entry No. 1, Ex. A, Plaintiff's Original Petition, ¶ 7.  Costello affirmed that the parties formed the contract "[i]n or around March 2006."  Defendant's Motion, Docket Entry No. 7, Ex. A, Declaration of Costello, ¶ 5.  Although no doubt important, the meaning of this discrepancy is not entirely clear in the record.  The court assumes that, perhaps, it relates to the method and location of the contract formation.

[12]    Plaintiff's Response, Docket Entry No. 13, Ex. 1, Affidavit of Garrone, ¶ 8.

no employee of Defendant traveled to Texas regarding the contract, before or after its formation.[13]  On February 27, 2006, Chad Miller, on behalf of Defendant, confirmed its acceptance of the contract and promised prompt payment of the first set of invoices.[14]

Plaintiff received a check from S-Fer on March 10, 2006, for Defendant's deposit on the materials.[15]  Before traveling to the three work sites for installation, Plaintiff imported the stone, prepared drawings and other materials, cut and fabricated the stone, and performed other preparatory tasks in Texas.[16]

In November 2006, a representative of Defendant signed tax-exemption certificates upon Plaintiff's request.[17]  By doing so, Defendant certified that the jobs were not performed in Texas and, thus, not subject to Texas sales tax.[18]  As explained on the certificates, "Material and services performed and sold for use outside the state of Texas are exempt from Texas sales taxes."[19]

---

[13]    Defendant's Motion, Docket Entry No. 7, Ex. A, Declaration of Costello, ¶ 6.

[14]    Plaintiff's Response, Docket Entry No. 13, Ex. 1, Affidavit of Garrone, ¶ 8.

[15]    Id.

[16]    See id. at ¶¶ 11-18.

[17]    See Defendant's Motion, Docket Entry No. 7, Ex. A, Declaration of Costello, ¶ 9; Exs. A-1 to A-3, tax exemption certificates.

[18]    See id. at Exs. A-1 to A-3, undated letters from Diane Hagen to "customer."

[19]    Id. at Exs. A-1 to A-3, tax exemption certificates.

4

The total price for stonework at three stores was $996,380, divided as follows:  $481,399 for a store in Beverly Hills, California; $349,000 for a store in Costa Mesa, California; and $165,981 for a store in Atlantic City, New Jersey.[20]  Defendant paid Plaintiff: $471,771 for the Beverly Hills work, leaving a balance of $9,628; $296,650 for the Costa Mesa work, leaving a balance of $52,350; and 139,000 for the Atlantic City work, leaving a balance of 26,981.[21]  The total unpaid balance is $88,959.[22]

In a letter dated December 4, 2007, Defendant wrote:

> The purpose of this letter is to memorialize the termination of all business relationships between [Defendant] and its affiliates . . . and [Plaintiff]. Based upon prior correspondence and conversations, we have agreed that [Defendant] and [Plaintiff] shall do no further business together and that neither party shall have any further obligation to the other.[23]

The letter contained language broadly releasing all claims of each party against the other.[24]  The letter also contained language committing to execute and deliver any other documents necessary to

---

[20]     Notice of Removal, Docket Entry No. 1, Ex. A, Plaintiff's Original Petition, ¶¶ 8-10.

[21]     Id. at ¶¶ 12-14.

[22]     Id. at ¶ 15.  Costello testified that Plaintiff's work at all locations was substandard, and a delay in supplying the stone to New Jersey resulted in a loss of holiday business.  Defendant's Motion, Docket Entry No. 7, Ex. A, Declaration of Costello, ¶ 12.

[23]     Plaintiff's Response, Docket Entry No. 13, Ex. 11, letter from Louis Curcio to Garrone dated Dec. 4, 2007, p. 1 (unnumbered).

[24]     See id. at pp. 1-2 (unnumbered).

effectuate the release of claims.[25]  The final paragraph stated, in part:

> If the foregoing meets with your approval, please sign the acknowledgment below and return to me at your earliest convenience, but in no event later than December 28, 2007.  If we do not hear back from you by such date, we will assume that you are in agreement with the foregoing, and such releases and related agreements set forth above shall automatically go into effect without the need for your signature or further action by [Defendant].[26]

The file copy of the letter does not contain the signature of a representative of Plaintiff.[27]

Plaintiff filed suit in Texas state court on April 29, 2008, asserting the following causes of action:  suit on sworn account, breach of contract, and quantum meruit.[28] Defendant, alleging improper service, removed the action within thirty days of receiving a copy of Plaintiff's petition.[29]  Defendant asserted jurisdiction based on diversity of citizenship.[30]  Two weeks after removing the case, Defendant filed the pending motion to dismiss or to transfer, which the court now considers.

## II.  Motion to Dismiss

---

[25]    See id. at p. 2 (unnumbered).

[26]    Id. at p. 2 (unnumbered).

[27]    See id.

[28]    See Notice of Removal, Docket Entry No. 1, Ex. A, Plaintiff's Original Petition, ¶¶ 16-32.

[29]    See Notice of Removal, Docket Entry No. 1, p. 1.

[30]    See id. at p. 2.

Defendant moves the court to dismiss Plaintiff's suit for lack of personal jurisdiction and venue.

## A.  Legal Standard for Personal Jurisdiction

The Federal Rules of Civil Procedure authorize a court to dismiss an action against a defendant when the court lacks personal jurisdiction over that defendant.  See Fed. R. Civ. P. 12(b)(2). On a motion to dismiss decided without benefit of an evidentiary hearing, the burden is on the plaintiff to establish a prima facie case in support of jurisdiction.  Johnston v. Multidata Sys. Int'l Corp., 523 F.3d 602, 609 (5th Cir. 2008); Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co., 517 F.3d 235, 241 (5th Cir. 2008).

The district court may receive "any combination of recognized methods of discovery," including affidavits, interrogatories, and depositions to assist it in the jurisdictional analysis.  Walk Haydel & Assocs., Inc., 517 F.3d at 241 (quoting Thompson v. Chrysler Motos Corp., 755 F.2d 1162, 1165 (5th Cir. 1985)).  The court resolves all conflicts in the evidence in favor of the plaintiff and accepts as true all of the plaintiff's uncontroverted allegations.  Johnston, 523 F.3d at 609; Luv n' care, Ltd. v. Insta-Mix, Inc., 438 F.3d 465, 469 (5th Cir.), cert. denied, 548 U.S. 904 (2006).

A federal court has personal jurisdiction over a nonresident defendant if the forum state's long-arm statute confers jurisdiction and if jurisdiction is consistent with due process

under the United States Constitution.  <u>Johnston</u>, 523 F.3d at 609.
In Texas, the long-arm statute permits personal jurisdiction to
full extent allowed by the Due Process Clause.  <u>Id.</u>

> The Due Process Clause . . . permits the exercise of
> personal jurisdiction over a nonresident defendant when
> (1) that defendant has purposefully availed himself of
> the benefits and protections of the forum state by
> establishing "minimum contacts" with the forum state; and
> (2) the exercise of jurisdiction over that defendant does
> not offend "traditional notions of fair play and
> substantial justice."

<u>Latshaw v. Johnston</u>, 167 F.3d 208, 211 (5th Cir. 1999)(quoting <u>Int'l
Shoe Co. v. Wash.</u>, 326 U.S. 310, 316 (1945)).

Minimum contacts are established with a state by a defendant
whose "conduct and connection" with that state are significant
enough that the defendant "should reasonably anticipate being haled
into court" in that state.  <u>Nuovo Pignone, SpA v. STORMAN ASIA M/V</u>,
310 F.3d 374, 379 (5th Cir. 2002)(quoting <u>Burger King Corp. v.
Rudzewicz</u>, 471 U.S. 462, 474 (1985)).  The defendant must
"purposely avail[] itself of the privilege of conducting activities
within the forum state, thus invoking the benefits and protections
of its laws."  <u>Nuovo Pignone, SpA</u>, 310 F.3d at 379 (quoting <u>Burger
King Corp.</u>, 471 U.S. at 475).  Unilateral activity on the part of
a plaintiff will not satisfy this requirement.  <u>Hydrokinetics, Inc.
v. Alaska Mech., Inc.</u>, 700 F.2d 1026, 1028 (5th Cir. 1983)(quoting
<u>Hanson v. Denckla</u>, 357 U.S. 235, 253 (1958)).

Continuous and systematic contacts are grounds for the
exercise of general jurisdiction over a nonresident defendant for

8

any cause of action regardless of whether the claim arose from specific activity within the forum. Luv n' care, Ltd., 438 F.3d at 469 (quoting Helicopteros Nacionales de Colom., S.A. v. Hall, 466 U.S. 408, 414 n.9, 415 (1984)).  "The 'continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum.'" Johnston, 523 F.3d at 609 (quoting Submersible Sys., Inc. v. Perforadora Cent., S.A., 249 F.3d 413, 419 (5th Cir. 2001).  In some cases, even repeated contacts may not be enough to warrant the exercise of general jurisdiction. Johnston, 523 F.3d at 609-10 (illustrating, through the discussion of several cases, "how difficult it is to establish general jurisdiction").  The contacts must be considered as a whole.  Id. at 610.

Specific jurisdiction may exist if the asserted cause of action arises out of or is related to the defendant's contact with the forum. Luv n' care, Ltd., 438 F.3d at 469 (citing Helicopteros Nacionales de Colom., S.A., 466 U.S. at 414, n.8).  The court should analyze the quality, nature, and extent of the defendant's contacts with the forum state, "the foreseeability of consequences within the forum from activities outside it, and the relationship between the cause of action and the contacts." Hydrokinetics, Inc., 700 F.2d at 1028 (quoting Prejean v. Sonatrach, Inc., 652 F.2d 1260, 1268 (5th Cir. 1981)).

Upon a showing of minimum contacts, the court considers the second prong of the due process analysis, whether personal jurisdiction comports with traditional notions of fair play and substantial justice.  See Ruston Gas Turbines, Inc. v. Donaldson Co., 9 F.3d 415, 421 (5th Cir. 1993).  Key to the court's analysis are the following factors:  "(1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state[s'] shared interest in furthering fundamental social policies."  Id.

B.  **Analysis**

Defendant argues that Plaintiff failed to establish that Defendant had sufficient contacts with Texas to justify either general or specific jurisdiction and that exercising jurisdiction would be unfair to Defendant.

1.  **General Jurisdiction**

Plaintiff struggles in its attempt to invoke general jurisdiction based on Defendant's direct presence in Texas. Plaintiff asserts that Defendant sells goods to S-Fer, which, in turn, operates three retail stores and sells products through a retail distributor in Texas.[31]  However, Defendant is not registered to do business in Texas, does not engage in business in Texas, does

_____

[31]     Plaintiff also argues that S-Fer has appointed a registered agent in Texas for service of process.  Because the court finds no alter-ego association between Defendant and S-Fer, it finds this fact irrelevant.

not maintain an office in Texas, and has no employees located in
Texas.[32]

The sale of products to customers in the forum state, unless
it amounts to a substantial portion of an entity's business, is an
insufficient basis for general jurisdiction.  See Johnston, 523
F.3d. at 611-14.  The evidence certainly does not reflect that
Defendant established an actual presence in Texas that was
substantial, continuous, or systematic.  Cf. Perkins v. Benguet
Consol. Mining Co., 342 U.S. 437, 445-46 (1952)(finding personal
jurisdiction where business entity temporarily relocated to forum
state and conducted meetings, maintained records and bank accounts,
and made business decisions there); Cent. Freight Lines, Inc. v.
APA Transp. Corp., 322 F.3d 376, 381 (5th Cir. 2003)(finding
contacts not substantial enough to support general jurisdiction
where business never registered to do business in forum state,
never maintained office or records, and never paid franchise taxes,
despite other activities in forum state, including interline
shipments to and from Texas and business development by employees
sent to the forum state).

Plaintiff focuses on Defendant's contacts through less direct
means.  Plaintiff argues that Defendant is subject to general
jurisdiction because S-Fer is an alter ego that operates retail

---

[32]    See Defendant's Motion, Docket Entry No. 7, Ex. A, Declaration of
Costello, ¶ 3.

stores in Texas and because Defendant maintains an interactive internet website that allows consumers to purchase its goods. These arguments require thoughtful consideration.

### a. Alter Ego

The Fifth Circuit has recognized that the contacts of an alter ego or agent may be imputed to a parent corporation for purposes of personal jurisdiction. Dickson Marine Inc. v. Panalpina, Inc., 179 F.3d 331, 338 (5th Cir. 1999); Hargrave v. Fibreboard Corp., 710 F.2d 1154, 1159 (5th Cir. 1983). However, the presumption is in favor of corporate separateness. Dickson Marine Inc., 179 F.3d at 338.

A parent-subsidiary relationship with a company that has minimum contacts in the forum state is insufficient on its own to justify personal jurisdiction over the parent; in other words, "a foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there." Alpine View Co. Ltd. v. Atlas Copco AB, 205 F.3d 208, 218 (5th Cir. 2000)(quoting Hargrave, 710 F.2d at 1159); see also Dickson Marine Inc., 179 F.3d at 338. In fact, the Fifth Circuit does not view 100 percent ownership, shared officers and directors, and financing arrangements, by themselves, to be sufficient to establish an alter ego relationship. Alpine View Co. Ltd., 205 F.3d at 218.

12

Rather, the plaintiff must present prima facie evidence that the parent corporation so controls the subsidiary that the activities of the subsidiary are attributable to the parent for jurisdictional purposes. Id.; see also Gardemal v. Westin Hotel Co., 186 F.3d 588, 593 (5th Cir. 1999)(stating that a subsidiary is an alter ego of a parent corporation when the subsidiary is "organized or operated as a mere tool or business conduit" and stating that the parent must completely dominate the subsidiary). In discussing how a plaintiff can overcome the presumption of corporate separateness, the Fifth Circuit stated:

> Invariably such clear evidence requires an additional or a "plus" factor, "something beyond the subsidiary's mere presence within the bosom of the corporate family." There must be evidence of one corporation asserting sufficient control to make the other its agent or alter ego. Moreover, the burden of making a prima facie showing of such symbiotic corporate relatedness is on the proponent of the agency/alter ego theory.

Dickson Marine Inc., 179 F.3d at 338 (internal citations omitted).

The factors set out by the Fifth Circuit for the consideration of whether a parent is amenable to personal jurisdiction based on the actions of a subsidiary are: 1) whether the parent owns all or a significant portion of the subsidiary's stock; 2) whether the two corporations have separate headquarters; 3) whether they have common officers and directors; 4) whether they observe corporate formalities; 5) whether they maintain separate accounting systems and bank accounts; 6) whether the assets of the corporations are commingled; 7) whether the parent exercises complete authority over

13

general policy; and 8) whether the subsidiary exercises complete authority over its daily operations.  See Hargrave, 710 F.2d at 1160.

A more recent Fifth Circuit case identified similar factors including (among others):  1) whether the two entities share common business departments; 2) whether they have consolidated financial statements and tax returns; 3) whether the parent finances the subsidiary or pays salaries and expenses; 4) whether the subsidiary is undercapitalized; 5) whether the subsidiary has any business other than that from the parent; 6) whether the parent uses the subsidiary's property as the parent's own; and 7) whether daily operations are separate.  Gundle Lining Constr. Corp. v. Adams County Asphalt, 85 F.3d 201, 208-09 (5th Cir. 1996).  The court's decision should be based on the totality of circumstances.  Id. at 209.

The evidence viewed in favor of Plaintiff provides the following information about Defendant's corporate relationship with S-Fer: 1) two individuals serve as officers or directors for both companies;[33] 2) the two companies share official addresses for two of several business locations that each maintain;[34] 3) S-Fer

---

[33]    See Plaintiff's Response, Docket Entry No. 13, Exs. 3, 4, entity information.    Plaintiff submitted the unauthenticated results of internet inquiries regarding the two companies.    The records are not entirely self-explanatory or consistent.  Nevertheless, the court reads them broadly in favor of Plaintiff.

[34]    See id.

operates the stores that were the subject of the contract;[35] 4) S-Fer made two payments to Plaintiff for work at the stores;[36] 5) S-Fer is a subsidiary of Defendant;[37] and 6) Defendant acts as a wholesaler to S-Fer.[38]

This evidence is insufficient to meet Plaintiff's prima facie burden of showing an alter-ego relationship. These facts demonstrate nothing more than a parent-subsidiary relationship. Shared officers or directors, two common offices, and a subsidiary relationship, by themselves, are insufficient. See Alpine View Co. Ltd., 205 F.3d at 218. Defendant's role as a wholesaler for S-Fer falls well short of demonstrating that all of S-Fer's business comes from Defendant, that the companies treat each other's property as its own, or that Defendant exercises authority over S-Fer's operations. The business world is full of similar arrangements between wholesalers and single-line retailers. Finally, S-Fer's operation of the subject stores[39] and payment of a portion of Plaintiff's bill while Defendant actually negotiated and entered the contract for Plaintiff's work, is simply not

---

[35]    See Defendant's Motion, Docket Entry No. 7, Ex. A, Declaration of Costello, ¶ 5.

[36]    See Plaintiff's Response, Docket Entry No. 13, Exs. 12, 26, copies of checks to Plaintiff dated Mar. 10, 2006, and July 28, 2006.

[37]    Defendant's Motion, Docket Entry No. 7, Ex. A, Declaration of Costello, ¶ 4.

[38]    Id.

[39]    The court notes that the evidence does not indicate in which entity's name the real property was held or leased.

enough, even when combined with all of the evidence of relatedness, to illustrate the kind of domination and control required to pierce Defendant's corporate veil.

Nothing indicates the required degree of control by Defendant over the finances and operations of S-Fer that is necessary to support a finding of alter ego. More specifically, no evidence suggests that Defendant finances S-Fer or pays its salaries and expenses, that Defendant influences S-Fer's daily operations and dictates its policy, that S-Fer is undercapitalized, or that the companies ignore corporate formalities such as separate books, accounts, and records or separate shareholder and board meetings.

The evidence, as a whole, does not imply that the two entities are merely alter egos for one another. General jurisdiction cannot be based on this theory.

### b. Website

Under certain circumstances, general jurisdiction may be exercised over a defendant who operates an interactive website, even absent any other contacts with the forum state. See Mink v. AAAA Dev. LLC, 190 F.3d 333, 336 (5th Cir. 1999). The Fifth Circuit employs a sliding scale developed in Zippo Manufacturing Co. v. Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). Revell v. Lidov, 317 F.3d 467, 470 (5th Cir. 2002); see also Mink, 190 F.3d at 336. The sliding scale has three benchmarks:  1) a passive website that merely provides information to the web surfer; 2) a

16

website with some interactive elements that allow for information exchange; and 3) a website through which the host engages in "repeated online contacts with forum residents over the internet." Revell, 317 F.3d at 470. The first of these does not make the host amenable to personal jurisdiction, but the third may.   Id. Personal jurisdiction based on a website of the second sort depends on "the extent of interactivity and nature of the forum contacts." Id.

In this case, Defendant maintains an multinational website that provides information about Defendant's company, products, museum, employment, and news.[40]  The website also provides a link to shop Defendant's products.[41]  When selected, the link connects to a website operated by The Neiman Marcus Group, through which Defendant's products may be purchased.[42]

The portion of the website that is operated by Defendant is passive and, thus, is not enough, even in combination with

---

[40]    See Plaintiff's Response, Docket Entry No. 13, Ex. 6, copy of webpage; Plaintiff's Reply Brief in Support of its Response to Motion to Dismiss, Docket Entry No. 23, Ex. A, copy of webpage.  The court also takes judicial notice of the website itself, www.ferragamo.com.

[41]    See Plaintiff's Response, Docket Entry No. 13, Ex. 6, copy of webpage; Plaintiff's Reply Brief in Support of its Response to Motion to Dismiss, Docket Entry No. 23, Exs. A, C, copies of webpages; www.ferragamo.com.

[42]    See Plaintiff's Reply Brief in Support of its Response to Motion to Dismiss, Docket Entry No. 23, Ex. C, copy of webpage; www.ferragamo.com (follow "SHOP ONLINE" hyperlink).

Defendant's other contacts, to subject Defendant to general jurisdiction in this forum.[43]

## 2. Specific Jurisdiction

In addition to the assertion of general jurisdiction discussed above, Plaintiff asserts that Defendant's contacts with Texas related to the present litigation justify haling Defendant before this court. Plaintiff contends that specific jurisdiction is proper because Defendant "took purposeful and affirmative action in Texas by negotiating and agreeing to the essential terms of the contract by telephone and by mail."[44]

In greater detail, the evidence favorable to Plaintiff reveals the following contacts. An employee of Defendant called Garrone to notify him of an opportunity to bid on construction work for Defendant. Defendant's architect sent drawings and work specifications to Plaintiff; after which time, Plaintiff and Defendant began negotiating the terms of the agreement from their respective offices by phone,[45] e-mail, and mail. The parties "finally accepted the essential terms of the contract and

---

[43]    Plaintiff claims that it is inequitable to allow Defendant to maintain an apparently interactive website and yet "shield itself . . . on the issue of jurisdiction" by relegating the shopping feature to a third party. Plaintiff's Reply Brief in Support of its Response to Motion to Dismiss, Docket Entry No. 23, p. 3. The court disagrees.

[44]    Plaintiff's Response, Docket Entry No. 13, p. 5.

[45]    Although Garrone testified that Defendant negotiated with him over the phone in Texas, he also stated that Defendant contacted him on his cell phone. Plaintiff's Response, Docket Entry No. 13, Ex. 1, Affidavit of Garrone, ¶¶ 5, 8. The court assumes, for purposes of this motion that Garrone was in Texas during those communications as well.

consummated the oral agreement at issue in this case on February 8, 2006."[46]  Plaintiff then prepared to perform its obligations under the contract by engaging in such activities as traveling to Italy to select stone and preparing (in Texas) final project quotes and initial invoices.  Plaintiff arranged for the project materials to be sent to Houston and, from there, to the project sites.[47] Plaintiff performed much of its work related to the contract in Texas, including the preparation of the stone for installation. Communications remained open between the parties during this time. Plaintiff received payments in Houston.  Defendant sent a letter to Plaintiff in Houston seeking the agreed termination of the parties' contractual relationship and mutual release of claims against each other.

Other uncontroverted facts are important in this analysis. Pursuant to the contract, Plaintiff agreed to supply and install stonework at stores operated by S-Fer located in New Jersey, California, and Virginia.  Garrone traveled to New York and New Jersey to meet with Defendant's representatives.  During the process of negotiating and contracting with Plaintiff, no representative of Defendant traveled to Texas.  Even after contract formation, Defendant did not send a representative to meet with Plaintiff in Texas.  Defendant "did not accept an offer by

---

[46]     Id. at ¶ 8.

[47]     See id. at ¶¶ 12, 14-15.

[Plaintiff] over the telephone in Houston, Texas."[48]   Other than making payments via S-Fer, Defendant performed no part of its contract obligations in Texas.[49]   Plaintiff requested the signature of a representative of Defendant on tax certificates, which confirmed that the project work would be performed outside of Texas, explaining that sales tax was therefore inapplicable.[50]

Because Plaintiff's unilateral activities, such as the work it performed in Texas prior to installation, cannot be attributed to Defendant, the court focuses solely on Defendant's actions that reached out to Texas.  See Hydrokinetics, Inc., 700 F.2d at 1028. Those actions are:  1) the request for a bid proposal from a Texas resident; 2) telephone, e-mail, and mail negotiations and post-

---

[48]   Defendant's Motion, Docket Entry No. 7, Ex. A, Declaration of Costello, ¶ 6. Plaintiff states, in his brief, that Defendant "orally negotiated and consummated the contract" with Plaintiff "by telephone and by mail in Texas" and that the "essential terms of the contract" were reached around February 8, 2006. Plaintiff's Response, Docket Entry No. 13, pp. 5, 6. Plaintiff cites this statement to Garrone's affirmations that negotiations occurred over the phone and that the agreement was consummated on February 8, 2006, neither of which supports the conclusion that the contract was consummated in Texas. See id.; id. at Ex. 1, Affidavit of Garrone, ¶¶ 5, 8. Plaintiff's petition alleges, "Plaintiff prepared an offer in Houston, Texas, which was accepted by Defendant over the telephone in Houston, Texas." Notice of Removal, Docket Entry No. 1, Ex. A, Plaintiff's Original Petition, ¶ 4. The court finds no supporting evidence in the record. Plaintiff's allegation is controverted by undisputed evidence submitted by Defendant and, therefore, is not taken as true. See Johnston, 523 F.3d at 609 (instructing the court to resolve conflicts in evidence in favor of the plaintiff and to accept as true all of the plaintiff's uncontroverted allegations).

[49]   Defendant's Motion, Docket Entry No. 7, Ex. A, Declaration of Costello, ¶ 8.

[50]   Id. at ¶ 9; Exs. A-1 to A-3, undated letters from Diane Hagen to "customer."

contract communications with a company in Texas;[51] and 3) sending payments to Plaintiff in Texas.

All of these contacts relate to one contract into which Defendant entered with a Texas resident. "A contract with an out-of-state party alone, although relevant, does not automatically establish sufficient minimum contacts." Electrosource, Inc. v. Horizon Battery Techs., Ltd., 176 F.3d 867, 872 (5th Cir. 1999); see also Stuart v. Spademan, 772 F.2d 1185, 1193 (5th Cir. 1985). The court considers the totality of circumstances in making the jurisdictional determination. See Stuart, 772 F.2d at 1192 ("While the number of contacts with a forum state is not determinative, it is indeed one of the relevant factors to be considered within the totality of the circumstances in assessing the propriety of exercising personal jurisdiction over a nonresident.").

In a suit arising out of a contract, the primary focus is on purposeful availment of the benefits of the forum state, regardless of the number of contacts. See Hydrokinetics, Inc., 700 F.2d at 1028. In Latshaw, the Fifth Circuit stated:

> Although a single act by the defendant directed at the forum state can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted, entering into a contract with an out-of-state party, without more, is not sufficient to establish minimum contacts. Rather, in a breach of contract case, to determine whether a party purposefully availed itself of

---

[51]     This includes sending information for bid preparation, communicating before, during, and after contract formation, and sending a letter of termination and release.

a forum, a court must evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . ."

Latshaw, 167 F.3d at 211 (footnotes omitted)(quoting Burger King Corp., 471 U.S. at 479).   The court must decide each case based on its own facts.   Hydrokinetics, Inc., 700 F.2d at 1028.

Through the years, the Fifth Circuit has decided the personal jurisdiction question based on various combinations of contacts in contract cases.   A review of a few of these cases provides significant guidance.

In 1983, the Fifth Circuit held that personal jurisdiction was lacking over a defendant corporation that agreed to purchase goods manufactured in the forum state, agreed to make payment for the goods in the forum state, communicated extensively with the plaintiff before contracting, and sent officers to the forum state twice, once to inspect the facilities and once to resolve a dispute.   Id. at 1028-29.   The place of contracting was the forum state because that is where acceptance of the offer occurred.   Id. at 1029.   Although Plaintiff was to perform contractual obligations in the forum state, no performance by the defendant occurred there, other than the payment for the goods.   Id.   The defendant did not regularly engage in business outside of its home state, and the transaction was "initiated by and substantially negotiated with" a representative of the plaintiff in the defendant's home state.   Id.

The opinion noted that the case involved a single transaction

22

to which all of the defendant's contacts with the forum state related.  _Id._  The court also found it significant that a choice of law provision required the application of the law of the defendant's home state and that the products were delivered by the plaintiff to the defendant outside the forum state.  _Id._  On the other hand, the court did not weigh heavily that the defendant sent payments to the forum state or that the parties communicated from their respective locations during contract development.  _Id._  The court concluded that, "considering the totality of the facts of this case, the necessary inference of purposeful availment is not supported."  _Id._ at 1029-30.

Two years later, the Fifth Circuit determined that the district court did not have jurisdiction over an individual defendant who entered into a contract with a resident of the forum state, shipped goods into the forum state for modification, sent letters and made telephone calls to the plaintiffs in the forum state, received communications from the plaintiffs, agreed to a choice-of-law provision selecting the law of the forum state, and mailed payments to the forum state.  _Stuart_, 772 F.2d at 1192-1194.  Opining that the quality of the contacts predominates over the number or timing of the contacts, the Fifth Circuit found that the defendant's contacts did not meet the minimum contacts standard.  _Id._ at 1194.

Another Fifth Circuit case addressed whether contracting with a forum entity, mailing payments to that entity, and engaging in communications with the entity during negotiations and performance of the contract are sufficient to infer purposeful availment. Gundle Lining Constr. Corp., 85 F.3d at 205. The key factor in the Fifth Circuit's analysis was a contract provision that allowed suit to be brought in the state in which labor was performed, services were rendered, or materials were furnished. Id. at 206. Although acknowledging that the provision was neither a choice-of-law clause nor a choice-of-forum clause, the court found that it "resemble[d] the latter." Id. Because labor on the contract was performed in the forum state, the exercise of personal jurisdiction over the nonresident defendant was not unreasonable. Id.

A 1999 case also discussed the parameters of specific jurisdiction in a contract case. See Electrosource, Inc., 176 F.3d at 871-74. The Fifth Circuit found that, despite a choice-of-law provision selecting the law of India, the forum court could exercise personal jurisdiction over a defendant who, as a result of "extensive negotiations," entered into a contract with the plaintiff in the forum state. Id. at 870, 872. The defendant solicited the plaintiff's business, contemplated an ongoing relationship with the plaintiff, corresponded extensively with the plaintiff, sent at least six different representatives to the forum

24

state on six separate visits related to the contract, and made payments to the plaintiff in Texas.  Id. at 872.

The court noted that the "actual course of dealing . . . involved wide reaching contacts and contemplated future consequences with the forum state."  Id.  Specifically, the plaintiff contracted to train the defendant's employees in the forum state, to provide design assistance and advice to the defendant in the forum state, and to monitor the defendant's product uniformity and quality control at least partially from Texas.  Id. at 872-73.  The court summarized the significant contacts with the forum state:

> [The defendant] sought out [the plaintiff] for a particular technology that had been developed in [the forum state], negotiated for its acquisition in [the forum state], entered into an agreement for the transfer of technology in [the forum state], and began the process of training, designing, and preparation in [the forum state] necessary to the transfer of technology."

Id. at 873-74.  The court distinguished Hydrokinetics, Inc. on the basis of the quantity and quality of the contacts with the forum state.  See id. at 873.

A fifth case is also informative.  In Central Freight Lines Inc., the nonresident defendant sent two representatives to the forum state for a preliminary meeting that ultimately led to negotiations and a long-term, standing agreement under which the parties would use the services of each other in the other's primary region of operation.  Cent. Freight Lines, Inc., 322 F.3d at 379,

382.  The parties negotiated the contract via telephone and written communications.  Id. at 382.

The Fifth Circuit stated that the contacts with the forum state could not be "characterized as random, fortuitous, or attenuated."  Id. at 383. (internal quotation marks omitted). Rather, the court found that the nonresident defendant knew that it was affiliating itself with a business based primarily in the forum state with customers from the forum state.  Id. at 382.  Even though the nonresident defendant, a freight delivery company, did not pick up or deliver freight in the forum state, it "took purposeful and affirmative action by entering into the [agreement], providing [the plaintiff] with pricing and shipping information, and agreeing to accept shipments" from the forum state "that had the clearly foreseeable effect of causing business activity in the forum state."  Id. (internal quotation marks omitted).  The court took particular note of the planned long-term association of the ongoing agreement.  See id. at 383.

As helpful as these cases are, none has precisely the same set of circumstances as presently before this court.  Therefore, the court must determine where among these cases the present facts fit. Like Hydrokinetics, Inc., Plaintiff and Defendant entered into a single transaction.[52]  Here, the installation work was to be

---

[52]    By way of contrast, the Fifth Circuit found, in another case, that the district court could exercise personal jurisdiction over a defendant that was sued on a series of contracts.  Sw. Offset, Inc. v. Hudco Publ'g Co., 622 F.2d 149, 150, 153 (5th Cir. 1980).  The Fifth Circuit noted, among other things, that

performed outside the forum state.  Similarly, the plaintiff in
Hydrokinetics, Inc. was to deliver its product outside the forum
state.   In both cases, some of the performance by the respective
plaintiffs occurred within the forum state.   The only pertinent
difference  between  the  cases  is  that  the  defendant  in
Hydrokinetics, Inc. did not directly solicit the plaintiff's
business, whereas the evidence here raises a fact issue[53] on whether
Defendant sought to contract with Plaintiff.   Stuart also bears
resemblance to this case.   There, factors, such as the shipment of
goods into the forum for modification and a choice-of-law clause
selecting the law of the forum state, exceed the quantity and
quality of the contacts in the case sub judice.   If the facts of
Hydrokinetics, Inc. and Stuart did not raise an inference of
purposeful availment sufficient to establish minimum contacts, the
lesser contacts of Defendant with Texas should also fail.

     The  other  three  cases  discussed  above  are  clearly
distinguishable.   The key to the Gundle Lining Construction Corp.
was a contract clause that the court found to resemble a choice-of-
forum clause, something not present here.   Electrosource, Inc.
involves all of the types of contacts that may be found in this

-------

the defendant was not a passive customer, but repeatedly placed orders and on
several occasions mailed copy and proofs to Texas to facilitate the manufacturing
process.   Id. at 152.

     [53]   For purposes of this motion to dismiss, the court views this fact
issue  favorably  to  Plaintiff,  in  other  words,  that  Defendant  solicited
Plaintiff's business.

case:  the defendant solicited the plaintiff's business, the parties entered the contract in the forum state,[54] the parties corresponded extensively, and the defendant made payments to the plaintiff in the forum state.  However, it was two other contacts that were the defining jurisdictional characteristics there:  the defendant paid six visits to the forum state related to the contract, and the contract contemplated ongoing performance by both parties in the forum state.  Finally, <u>Central Freight Lines Inc.</u> turned on the fact that the parties entered a long-term contract that contemplated many future contacts between the defendant and the forum state.[55]

The court finds that this case is more closely aligned with <u>Hydrokinetics, Inc.</u> and <u>Stuart</u>, two cases in which the Fifth Circuit found jurisdiction to be lacking.  In the other three cases, the decision to exercise personal jurisdiction turned on facts not present here.

_____

[54]    The court assumes, despite the lack of evidence, that the contract in this case could be said to have been entered in Texas.

[55]    Plaintiff argues, in its recent surreply, that, at the time of negotiations, Defendant requested a bid package from Plaintiff for a store location in Dallas.  <u>See</u> Plaintiff's Reply Brief in Support of its Response to Motion to Dismiss, Docket Entry No. 23, p. 3-4.  Plaintiff attached what purports to be a store schematic and bid package.  <u>See</u> <u>id.</u> at Exs. F-H.  Plaintiff argues that, like the parties in <u>Central Freight Lines Inc.</u>, it and Defendant contemplated future business activity in the forum state.  The court is unmoved by this argument.  Even if the court ignored reliability standards for evidence and accepted the unauthenticated bid package as evidence of Defendant's solicitation of future business with Plaintiff, it fails to establish that the parties contemplated future relations as part of the contract actually in issue here.  Absent a connection to the present litigation, the evidence does not promote specific jurisdiction.  Additionally, the possibility of a future contract is far too speculative to support general jurisdiction, even when considered in connection with all of Defendant's other contacts with Texas.

The totality of contacts in this case falls short of the necessary minimum contacts to support either specific or general jurisdiction over Defendant.  Having found that Defendant lacks minimum contacts with Texas, the court does not need to discuss the fairness factors.  On whole, the court finds that Plaintiff failed to meet its prima facie burden of establishing that the court has personal jurisdiction over Defendant.  Based on this conclusion, the court does not reach Defendant's motion to transfer venue.

### IV.  Conclusion

For the reasons explained in the foregoing discussion, the court **GRANTS** Defendant's motion to dismiss and **DENIES** its motion to transfer as **MOOT**.  The court **DENIES** Defendant's motion to strike, but **GRANTS** Defendant leave to file its "sur-surreply."

**SIGNED** in Houston, Texas, this 10th day of November, 2008.

Nancy K. Johnson
United States Magistrate Judge